SEARS and Others *v.* THE BOARD OF COMMISSIONERS OF WARREN COUNTY.

LICENSE TO VEND FOREIGN MERCHANDISE.—*Constitution of the United States. Non-Residents of this State.*—The provision contained in "an act concerning licenses to vend foreign merchandise, to exhibit any caravan, menagerie, circus, rope and wire dancing, puppet show, and legerdemain,",1 G. & H. 424, which requires a license fee to be paid by travelling merchants and pedlers, who are not residents of this State, to vend foreign merchandise, is not in conflict with the clause of the constitution of the United States which declares that "Congress shall have power to regulate commerce with foreign nations, and among the several states," article 1, section 8, clause 3. It is not in conflict with the prohibition contained in clause 3, article 1, section 10, of that constitution declaring that "no state shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws;" nor is it in conflict with the provision that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," section 2, article 4.

SAME.—*Constitution of this State.—Citizens.—Non-Residents.*—The provision, in the constitution of this State, that "the general assembly shall not grant to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens," section 23, article 1, has no application to non-residents or persons who are not citizens of this State and who are doing business in the State.

APPEAL from the Warren Circuit Court.

BUSKIRK, J.—This case was heard and decided in the court below upon an agreed statement of facts; and that statement fully raises the question whether so much of an act entitled "an act concerning licenses to vend foreign merchandise, to exhibit any caravan, menagerie, circus, rope and wire dancing, puppet show, and legerdemain" (Approved June 15th, 1852,) as affects a license to vend foreign merchandise is in conflict with the constitution of the United States, and of this State.

The substance of the agreed statement of facts is as follows:

"That Alvin High is the legally elected and qualified treasurer of Warren county, Indiana; that the defendants are residents of Iroquois county, in the State of Illinois, and are doing business under the firm name of F. J. Sears & Co.; that said defendants are travelling merchants or pedlars, vending foreign merchandise, except tea and coffee, in Warren county, Indiana, and have entered upon the fourth year in the same business, with the same capital employed in Warren county, and without obtaining a license from the county treasurer, or paying the amount required for said license, as hereinafter stated; that the capital employed by the said defendants in Warren county, as such travelling merchants and pedlars, amounts yearly to the sum of two thousand and five dollars, and that said defendants have not paid to the treasurer of Warren county, for any of said years, the amount required for a license." The cause was, by the agreement of the parties, submitted to the court for trial, and resulted in a finding for the plaintiffs. The court overruled a motion for a new trial and rendered judgment on the finding. The appellants excepted and appealed to this court.

So much of the statute under consideration as requires of venders of foreign merchandise a license reads as follows:

"To travelling merchants and pedlars, who are not residents of this State, to vend foreign merchandise, five dollars, where the capital employed does not exceed one thou-

sand dollars; seven dollars and fifty cents for any amount over one thousand dollars, and not exceeding two thousand dollars; ten dollars for any amount over two thousand and not exceeding five thousand dollars, and twenty dollars for any amount exceeding five thousand dollars; to be paid in each county where they shall offer for sale any such merchandise, except tea and coffee." 1 G. & H. 424.

It is maintained by the appellants that the above quoted statute is in conflict with the following clauses of the Constitution of the United States, and of this State.

"Congress shall have power to regulate commerce with foreign nations, and among the several States." Art. 1, sec. 8, clause 3.

" No state shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws; and the net produce of all duties and imposts, laid by any state on imports or exports, shall be for the use of the treasury of the United States; and all such laws shall be subject to the revision and control of the Congress." Clause 3, article 1, section 10.

" The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." Sec. 2 of article 4.

" The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." Sec. 23 of article 1, Constitution of Indiana.

. This is the first time that the precise question involved in this case has come before this court for examination and decision, and, in the absence of adjudged cases in this court, we shall mainly rely upon the decisions of the Supreme Court of the United States. Even if the decisions of the Supreme Court of the United States, which place a construction upon and give an interpretation to the federal constitution, be not absolutely binding and conclusive upon the state courts, they are entitled to the highest weight and

consideration; and where the question involved has not been settled and determined by decisions of the state court, the construction given to such instrument by the federal courts should be recognized and treated as the true construction.

The delicacy and importance of the question involved in this case are stated with great clearness and force by Mr. Justice MILLER, in delivering the opinion of the Supreme Court, in *Woodruff* v. *Parham*, 8 Wal. 123, where he says:

"The subject of the relative rights and powers of the Federal and state governments, in regard to taxation, always delicate, has acquired an importance by reason of the increased public burdens growing out of the recent war, which demands of all who may be called in the discharge of public duty to decide upon any of its various phases, that it shall be done with great care and deliberation. Happily for us, much the larger share of these responsibilities rests with the legislative departments of the state and Federal governments. But when, under the pressure of a taxation necessarily heavy, and in many cases new in its character, the parties affected by it resort to the courts to determine whether their individual rights have been infringed by legislation, and assert rights supposed to be guaranteed by the Federal Constitution, they, in every such case properly brought before us, devolve upon this court an obligation to decide the question raised from which there is no escape."

In reference to the first clause of the Constitution of the United States, above quoted, and which confers upon Congress the power "to regulate commerce with foreign nations, and among the several states," all decisions of the Supreme Court agree that the power "to regulate commerce with foreign nations" confers upon the federal government the sole and exclusive power to regulate and control all commercial intercourse between the United States and all foreign nations; and that the power to regulate commerce "among the several states" is restricted and limited in its force and application to the several states, as states, and confers upon

Sears and Others *v.* The Board of Commissioners of Warren County.

Congress no power of regulation, or direct control over the internal commerce or domestic trade of the states.

It was held by the Supreme Court, in *Brown* v. *The State of Maryland*, 12 Wheat. 419, that the clause under consideration conferred on Congress the sole and absolute power to regulate and control all commercial intercourse between the United States and foreign nations, and among the several states; that the right to import foreign merchandise carried with it the right to sell the goods imported in the form and shape in which they were imported; that it prohibited the states from imposing any tax upon an imported article while in the hands of the importer, or while in transit through the state from one port to another, for the purpose of re-exportation.

It was said by Mr. Chief Justice TANEY, in the License Cases, 5 How. 504, that "it is equally clear, that the power of Congress over this subject does not extend further than the regulation of commerce with foreign nations and among the several states; and that beyond these limits, the states have never surrendered their power over trade and commerce, and may still exercise it, free from any controlling power on the part of the general government. Every state, therefore, may regulate its own internal traffic, according to its own judgment, and upon its own views of the interest and well-being of its citizens."

Mr. Chief Justice CHASE, in delivering the opinion of the Supreme Court, in the License Tax Cases, 5 Wal. 462, says:

"Thus, Congress having power to regulate commerce with foreign nations, and among the several states, and with the Indian tribes, may, without doubt, provide for granting coasting licenses, licenses to pilots, licenses to trade with the Indians, and any other licenses necessary or proper for the exercise of that great and extensive power; and the same observation is applicable to every other power of Congress, to the exercise of which the granting of licenses may be incident. All such licenses confer authority, and give rights to the licensee.

"But very different considerations apply to the internal

commerce or domestic trade of the states. Over this commerce and trade Congress has no power of regulation, nor any direct control. This power belongs exclusively to the states. No interference, by Congress, with the business of citizens transacted within a state is warranted by the Constitution, except such as is strictly incidental to the exercise of powers clearly granted to the legislature. The power to authorize a business within a state is plainly repugnant to the exclusive power of the state over the same subject."

From these decisions, it is quite obvious to us that the statute under consideration is not repugnant to the power given to Congress to regulate commerce with foreign nations and among the several states.

Is the statute under consideration in conflict with that clause of the federal constitution which prohibits the states from laying any imposts or duties on imports or exports?

This question came directly before the Supreme Court of the United States, for the first time, in the case of *Brown* v. *The State of Maryland,* 12 Wheaton, 419. The opinion of the court was delivered by Chief Justice MARSHALL. Mr. Chief Justice TANEY has, in the License Cases *supra,* condensed and placed a construction upon the very able and learned opinion of Chief Justice MARSHALL, and we copy from the opinion of Chief Justice TANEY. He says:

" And the court there held that an article authorized by a law of Congress to be imported continued to be a part of foreign commerce of the country while it remained in the hands of the importer for sale, in the original bale, package, or vessel in which it was imported; that the authority given to import necessarily carried with it the right to sell the imported article in the form and shape in which it was imported, and that no state, either by direct assessment, or by requiring a license from the importer before he was permitted to sell, could impose any burden upon him or the property imported, beyond what the law of Congress had itself imposed; but that, when the original package was broken up, for use or for retail by the importer, and also when the com-

Sears and Others *v.* The Board of Commissioners of Warren County.

modity had passed from his hands into the hands of a purchaser, it ceased to be an import, or a part of foreign commerce, and became subject to the laws of the state, and might be taxed for state purposes, and the sale regulated by the state, like any other property."

But it may be claimed that the court, in *Brown* v. *Maryland, supra,* decided that a state could not levy a tax upon property that had been imported from a sister state. The remark of Chief Justice MARSHALL that is relied upon to sustain that view has been recently examined, explained, and qualified by the Supreme Court, in *Woodruff* v. *Parham,* 8 Wal. 123. In the latter case it is said:

"The case of *Brown* v. *Maryland,* as we have already said, arose out of a statute of that state, taxing, by way of discrimination, importers who sold, by wholesale, foreign goods. And Chief Justice MARSHALL, in delivering the opinion of the court, distinctly bases the invalidity of the statute, first, on the clause of the constitution which forbids a state to levy imposts or duties on imports; and, second, that which confers on Congress the power to regulate commerce with foreign nations, among the states, and with the Indian tribes.

"The casual remark, therefore, made in the close of the opinion, 'that we suppose the principles laid down in this case to apply equally to importations from a sister state,' can only be received as an intimation of what they might decide if the case ever came before them, for no such case was then to be decided. It is not, therefore, a judicial decision of the question, even if the remark was intended to apply to the first of the grounds on which that decision was placed.

"But the opinion in that case discusses, as we have said, under two distinct heads, the two clauses of the constitution which he supposed to be violated by the Maryland statute, and the remark above quoted follows immediately the discussion of the second proposition, or the applicability of the commerce clause to that case.

" If the court then meant to say that a tax levied on goods from a sister state, which was not levied on goods of a simi-lar character produced within the state, would be in conflict with the clause of the constitution, giving Congress the right ' to regulate commerce among the states,' as much as the tax on foreign goods, then under consideration, was in conflict with the authority ' to regulate commerce with foreign nations,' then we agree to the proposition."

The court, in the same case, say : " It is not too much to say that, so far as our research has extended, neither the word export, import, or impost is to be found in the discus-sions on the subject, as they have come down to us from that time, in reference to any other than foreign commerce, with-out some special form of words to show that foreign com-merce is not meant. The only allusion to imposts in the articles of confederation is clearly limited to duties on goods imported from foreign states. Wherever we find the griev-ance to be remedied by this provision of the constitution alluded to, the duty levied by the states on foreign importa-tions is alone mentioned, and the advantages to accrue to Con-gress from the power confided to it, and withheld from the states, are always mentioned with exclusive reference to for-eign trade.

"Whether we look, then, to the terms of the clause of the constitution in question, or to its relation to the other parts of that instrument, or to the history of its formation and adoption, or to the comments of the eminent men who took part in those transactions, we are forced to the conclusion that no intention existed to prohibit, by this clause, the right of one state to tax articles brought into it from another. If we examine, for a moment, the result of an opposite doc-trine, we shall be well satisfied with the wisdom of the con-stitution as thus construed.

"The merchant of Chicago who buys his goods in New York, and sells at wholesale in the original packages, may have his millions employed in the trade for half a lifetime and escape all state, county, and city taxes; for all that he is

worth is invested in goods which he claims to be protected as imports from New York. Neither the state nor the city which protects his life and property can make him contribute a dollar to support its government, improve its thoroughfares, or educate its children. The merchant in a town in Massachusetts, who deals only in wholesale, if he purchase his goods in New York, is exempt from taxation. If his neighbor purchase in Boston, he must pay all the taxes which Massachusetts levies with equal justice on the property of all its citizens."

It is said by the Supreme Court, in *Ward* v. *The State of Maryland*, 9 Amer. Law Reg. (N. S.), 424, that "it would be a strained construction of the power to regulate commerce 'among the several states,' to hold that it confers upon Congress the power to authorize the citizens of one state to travel through another, and sell their goods, either carried with them, or by sample, without license, whilst the citizens of the state where they thus travel and trade can be rightfully subjected to a state tax on their goods, and a state license to sell them. But whether the clause in question confers such powers or not, it is sufficient that it has never been exercised by Congress, and therefore state laws and state regulations on the subject are valid; for the mere grant of such power to Congress, so far as it relates to a case like the present, is not, of itself, a prohibition to the states, so as to render all state laws on the subject null and void."

Mr. Justice McLEAN, in the License Cases, 5 How. 504, says: "A state cannot, with a view to encourage its local manufactures, prohibit the use of foreign articles, or impose such a regulation as shall in effect be a prohibition. But it may tax such property as it taxes other and similar articles in the state, either specifically or in the form of a license to sell. A license may be required to sell foreign articles, when those of a domestic manufacture are sold without one."

Discriminations to this extent are made in the license laws of almost every state. In the case of *The People* v. *Thurber*, 13 Ill. 554, where a law imposing a tax of three per cent. on

premiums charged by agents of foreign insurance companies was assailed, the court held it not to be a tax on property, but a burden imposed on the agent for the right of exercising a franchise or privilege within the state, which the legislature would have the right to withhold or inhibit altogether. "It would be strange," says the court, "if the legislature had not the power to prescribe the terms upon which foreign corporations should be permitted to come into this state and carry on their business, or even prohibit them altogether."

And in *Cumming* v. *Savannah*, R. M. Charl. 26, it was decided by Judge BERRIEN, that a law imposing a tax of fifty cents on the one hundred dollars on all goods, wares, and merchandise not the produce of the state, which shall be sold on commission in the city of Savannah by any person residing within its limits, was a legitimate exercise of power by the state as a regulation of its own internal trade and commerce.

We will next examine whether there is anything in the section relating to "privileges and immunities" which is contravened by the act under consideration. The Supreme Court has declined to give a general construction to this section.

In *Conner* v. *Elliott*, 18 How. 591, the court say: "We do not deem it needful to attempt to define the meaning of the word privileges in this clause of the constitution. It is safer, and more in accordance with the duty of a judicial tribunal to leave its meaning to be determined, in each case, upon a view of the particular rights asserted and denied therein. And especially is this true, when we are dealing with so broad a provision, involving matters not only of great delicacy and importance, but which are of such a character that any merely abstract definition could scarcely be correct; and a failure to make it so would certainly produce mischief."

The Supreme Court of Maryland, in *Campbell* v. *Morris*, 3 H. & McH. 535, gave a partial construction in these words: "It means that the citizens of all the states shall have the peculiar advantage of acquiring and holding real as well as

personal property, and that such property shall be protected and secured by the laws of the state, in the same manner as the property of the citizens of the state is protected.  It means such property shall not be liable to any taxes or burdens which the property of the citizens is not subject to.  It may also mean that, as creditors, they shall be on the same footing with the state creditor, in the payment of the debts of a deceased debtor.  It secures and protects personal rights."

In the enumeration made by Judge WASHINGTON, in *Corfield* v. *Coryell*, 4 Wash. C. C. 371, are included, "the right of a citizen of one state to pass through or to reside in any other state, for purposes of trade, agriculture, professional pursuits, or otherwise; to claim the benefit of the writ of *habeas corpus;* to institute and maintain actions of any kind in the state courts; to take, hold, and dispose of property, either real or personal; and an exemption from higher taxes or impositions than are paid by the other citizens of the state."

And in *Crandall* v. *The State*, 10 Conn. 336, Chief Justice DAGGETT held that "should a citizen of Connecticut purchase a farm in Massachusetts, and the legislature of Massachusetts tax the owner of that farm, four times as much as they would tax a citizen of Massachusetts, because the one resided in Connecticut and the other in Massachusetts; or should a law be passed by either of those states that no citizen of the other should reside or trade in its limits, such laws would be unconstitutional as violative of this clause in the Constitution of the United States."

The state of Maryland recently enacted a law that "no person, not being a permanent resident of this state, shall sell, offer for sale, or expose for sale, within the limits of the city of Baltimore, any goods, wares, or merchandise, other than agricultural products and articles manufactured in the state of Maryland, within the limits of said city, either by card, sample, or other specimen, or by written or printed trade list or catalogue, whether such person be the maker or

manufacturer thereof or not, without first obtaining a license so to do."

The rate of license was fixed at three hundred dollars, to run one year from date, and the penalty of so selling without license is, for each offense, not less than four hundred nor more than six hundred dollars.

Ward was indicted for violating the above statute. His defense was that the statute was in conflict with the constitution of the United States.

The Supreme Court of that state, in *Ward* v. *Maryland, supra,* after construing the above quoted clauses of the federal constitution and reviewing several decisions, say: "These decisions certainly show that the provision (the one relating to privileges and immunities) is effective to prevent the property, real or personal, owned by a non-resident and located in the state, from being subjected to any higher rate of state taxation than similar property of resident owners; but, in our judgment, they do not cover the present case. The law before us is not a tax upon either person or property, but on a particular trade or business carried on in the state, and cannot, in our opinion, be regarded as imposing a higher rate of taxation upon non-residents than upon citizens, either in respect to person or property. Nor do we perceive it to be, in any other respect, unjust, unfair, or discriminating in operation and effect. We have shown that the state has power to impose a license tax on all trade or business carried on in its borders, whether by its own citizens or those of other states. The resident owner or trader is required to take out a license to carry on his business or trade, and his property and goods here situated are also subject to state, county, and city taxation. There is nothing upon the face of the law, or in this record, to show that the non-resident trader, doing the business thus taxed, is thereby subjected to heavier taxation than the resident merchant, carrying on the like retail or wholesale business. It certainly cannot be said to be an immunity or privilege secured by this clause of the constitution, that a non-resident merchant or trader shall

be permitted to come into a state and trade or do business therein, and pay neither a license tax on his trade nor a tax on his property, whilst the resident merchant must pay both; to have all the advantages of a resident trader, and escape all taxation to which the latter is subjected."

We are of the opinion that the statute in question is not repugnant to any of the above quoted clauses of the federal constitution.

We hold that the clause which confers on Congress the power to regulate "commerce among the states," does not comprehend any commerce which is purely internal, between man and man in a single state, or between different parts of the same state, and not extending to or affecting other states; and that commerce among the states means commerce which concerns more states than one. The completely internal commerce of a state is properly reserved to the state. The trade or business in which the appellants were engaged was purely internal traffic and does not come within the meaning of the phrase of "commerce among the states."

We are further of the opinion that the statute under consideration does not conflict with that clause of the federal constitution which prohibits the states from laying any imposts or duties on imports or exports, for the reason, that it is well settled that this clause only refers to imported goods while they remain in the original package in the hands of the importer; and that when the importer has sold such goods and they have become a part of the general mass of the property in the state, they have ceased to be articles of foreign commerce, and are subject to the sole and exclusive control and regulation of the state in which they may be.

It is quite obvious to us that the privilege and exemption claimed by the appellants do not come within any of the constructions that have been placed upon the section in relation to privileges and immunities.

The operation of the federal constitution is co-extensive with the boundaries of the United States; but the constitution of a state has no extra-territorial operation, and can

only operate upon the citizens of the state. The above quoted section from our State constitution can have no application to non-residents of the State. The word citizen as used in said section has exclusive reference to citizens of this State, and not to citizens of other states who are doing business in this State.

The judgment is affirmed, with costs.

*B. F. Gregory* and *J. Harper*, for appellants.

*J. H. Brown*, for appellee.