[No. 844.]

## EX PARTE JOHN B. ROBINSON.

12  263
13  427
14  372

DRUMMER ACT CONSTITUTIONAL.—In construing the act of February 20, 1877 (Statutes 1877–79), commonly known as the drummer act: *Held*, that the act is a revenue law, imposing a tax upon drummers and traveling merchants who go from place to place soliciting orders for goods, wares, and merchandise; that it does not impose any impost or duty upon imports, and does not interfere with the power of congress to regulate commerce among the states, and is not repugnant to any provision of the state or federal constitution.

POWER OF STATE TAXATION.—The power to tax all the property and business within the state is an essential attribute of its sovereignty; there is no restraint upon its exercise, when within constitutional limits, except the responsibility of the members of the legislature to their constituents.

SECTION 1, ARTICLE 10, OF THE CONSTITUTION, CONSTRUED.—In construing section 1 of article 10 of the state constitution: *Held*, that it refers particularly to the levy of *ad valorem* taxes on all property, real and personal, and does not apply to licenses imposed for conducting any business or profession.

HABEAS CORPUS before the supreme court. The petitioner sets forth that he is unlawfully imprisoned, detained, confined and restrained of his liberty by the sheriff of Storey county; that he is illegally held and restrained of his liberty under the act of the legislature, entitled "An act to amend an act to provide revenue for the support of the government of the state of Nevada, approved March 9, 1865;" amended March 4, 1871 (approved February 20, 1877); that he is a citizen of the United States, and resides in the state of California; that the imposition of the license or tax required by the provisions of said act deprives him, and the persons he represents, of the privileges and immunities of citizens in the state of Nevada, or in other states; that the act is in violation of the constitution of the United States, in this: that it is an attempt to regulate commerce between the different states; that it imposes a tax, and discriminates against persons engaged in selling all kinds of goods, wares and merchandise, and excepts from such tax persons engaged in selling fruits or agricultural products; that the act is in violation of the provisions of the constitution of the state of Nevada, in this: that it pro-

vides for the collection of a tax upon petitioner in every county in the state of Nevada, and was imposed, not for the purpose of revenue, but for prohibition of persons transacting such business as petitioner is engaged in.

*Lewis & Deal*, for Petitioner:

I. The license fee demanded is a tax. The act in question levies an unequal tax in contravention of our constitution, requiring all taxes to be uniform and equal. It levies an impost on imports. It is an interference with interstate commerce, and is therefore void. All taxation should be equal and uniform. (Const. Nev. art. X, sec. 1.)

There must not only be a uniform rate of taxation, but the tax must be equal. (20 La. An. 373.) The only question that can arise in these cases is simply as to what shall constitute uniformity and equality. When the tax is direct on property, there is no difficulty; but when a license-tax is imposed, it may often be a difficult thing to preserve uniformity and equality. But it is clear to us that no matter what the difficulty, the legislature must do all it can to attain that end. One method adopted for that purpose in case of license-tax, is to regulate the cost of the license by the amount of business done, or profits derived from the business licensed; and that, indeed, is the usual course pursued when the license is imposed on merchants. But in this case, the court will observe that the license-tax is the same on all persons soliciting orders—the man who obtains no orders at all and the one who may obtain hundreds; the solicitor who sells thousands of dollars worth of goods and the one who sells none. As an illustration of what is meant by equality and uniformity of taxation, we call attention to the case of *Exchange Bank of Columbus* v. *Hines*, 3 Ohio St. 15.

It has always been held by the supreme court of the United States, and we believe by most of the state courts, that a license required of a person for the privilege of selling merchandise is a tax on the merchandise so sold. (*Brown v. State of Maryland*, 12 Wheat. 444; 91 U. S. Rep. 278-9; 2 Cush. 572; 11 Gill & J., 506; Cooley on Const.

Lim., 201; *Almy* v. *State of Cal.*, 24 How. 169; *Freight tax cases*, 15 Wall. 272-3; *Henderson et al.* v. *Mayor of New York*, 92 U. S. Rep. 268.)

There is a wide distinction between the power to license merely, and the power to raise revenue by means of licenses. The act imposes a different rate of taxation on property sold by solicitors from what is does on property or goods brought into the state in any other way.

II. The law in question is an interference with inter-state commerce, and is, therefore obnoxious to that provision of the federal constitution which confers upon congress the power to regulate commerce between the states. (Art. I, sec. 8.) We maintain that the supreme court has so held in several cases, and that, therefore, this question is *res adjudicata*. It was necessarily so held in the case of *Almy* v. *California*, for a law imposing a tax on gold shipped from California to New York was annulled. (*Woodruff* v. *Parham*, 8 Wall. 123; Freight tax case, 15 Wall. 232; *Welton* v. *State of Missouri*, 91 U. Rep., 280–282.)

The law virtually and in effect says to the California merchant: "You shall not sell goods in the state of Nevada, until you have taken out a license and paid therefor an onerous tax." This is the effect of the law, and therefore it must be construed as if such were its language, for it is to the effect and not to the language that the court must look when giving construction to acts of this kind. (*Henderson* v. *Mayor of New York*, 92 U. S. Rep. 268.)

It appears to us that every authoritative case upon this subject in the supreme court of the United States is against the validity of the act in question. All the reasoning in the case of *Brown* v. *State of Maryland* (12 Wheat. 417), is in favor of the position taken by us. So with the case of *Welton* v. *Missouri* (91 U. S. Rep., 275; and the case of the *State Freight Tax* (15 Wall. 232), it appears to us is on all fours with this case. So, also, *Almy* v. *California*, 24 How. 169.

*T. W. W. Davies*, for the State:

I. The present writ is not the proper remedy. If the

petitioner is not satisfied with the law under which his arrest was made, he must seek its invalidation in some other mode. The functions of the writ of *habeas corpus*, where the party who has appealed to his aid is in custody under process, do not extend beyond an inquiry into the jurisdiction of the court by which it was issued, and the validity of the process upon its face. (*Platt* v. *Harrison*, 7 Iowa, 80; *Commonwealth* v. *Lucky*, 1 Watts, 67, and *In re Callicot*, 8 Blatchford C. C. R. 89; *Ex parte McCullough*, 35 Cal. 100; *Ex parte Winston*, 9 Nev. 73.)

II. Independent of her duties to the federal government, the state of Nevada is a sovereignty, and as such possesses unlimited powers of taxation over all the property and business within her limits, except where the state constitution has made limitations. (*Gibson* v. *Mason*, 5 Nev. 292; *Ex parte Crandall*, 1 Id. 294.) There is nothing in the constitution to prevent the legislature from exempting the agricultural products of the state. The legislature can give direct premiums to any branch of industry it may desire to patronize or encourage. If a sum of money can be appropriated to pay an inventor for his invention, or a farmer for a skillfully conducted farm, or a mechanic for an improvement in his art, what is to hinder the indirect encouragement of the same persons by adopting the revenue laws to the same purposes. Bounties are given for the boring of artesian wells in desert districts; for the reclamation by drainage of swamp lands; for the planting of forest trees; and for the destruction of noxious animals; all tending to the encouragement of agricultural interests.

III. The act cannot be considered as a regulation of commerce. A state may require a license from any person offering to sell goods imported from another state. (License Cases, 5 How. 573; *Nathan* v. *Louisiana*, 8 How. 73; *Ex parte Crandall*, 1 Nev. 205; *Houston* v. *Moore*, 5 Wheat. 48, Passenger Cases, 7 How. 283; *Wilson* v. *The Blackbird Creek Marsh Co.*, 2 Pet. 245.) The license required by the law is equal and uniform. (*Ex parte Crandall*, 1 Nev. 294; *Crow et al.* v. *State of Missouri* (dissenting opinion by Napton, J.), 14 Mo. 324; *Gibson* v. *Mason*, 5 Nev. 283.)

IV. The grant of power to congress to regulate commerce is a mere affirmative grant of power not exclusive in its character, not affecting in the slightest degree the taxing power of the states.   The federal government has an ample and full protection to an efficient exercise of this power over commerce, in the supremacy of its laws, made in pursuance of the constitution over any conflicting state enactments, and in the total prohibition to the states of all power to impose duties on imports or exports or tonnage. (*Nathan* v. *Louisiana*, 8 How. 73; License Cases, 5 Id. 573; *Wilson* v. *Blackbird Creek Marsh Co.*, 2 Pet. 261; *Gibbons* v. *Ogden*, 9 Wheat. 1; *New York* v. *Miln*, 11 Pet. 102; *Cooley* v. *Board of Wardens of Philadelphia*, 12 How. 299; *Paul* v. *Virginia*, 8 Wall. 168; *Houston* v. *Moore*, 5 Wheat. 1; *Sturges* v. *Crowninshield*, 4 Id. 196; *Livingston* v. *Van Ingen*, 9 John. 507; *McCullough* v. *Maryland*, 4 Wheat. 428; 9 Wheat. per Marshall, C. J. 200; 5 Wheat. per Washington, J. 21, and per Storey, J. 49; 2 Pet. per Marshall, C. J. 252; 2 Wheat. per Marshall, C. J. 448; 11 Pet. per Barber, J. 134–5–6–9–40–1; per Thompson, J. 145, 6–151; 5 How. per Taney, C. J. 574, 578–586, 607–8; per Catron, J. 607; per Nelson, J. 618; per Woodbury, J. 618–19, 624–5; 9 Wheat. per Marshall, C. J. 199; Id. 210–11.)

V. The presumptions are always in favor of the rightful exercise of the law-making power, and courts will only interfere in cases of clear and unquestioned violation of the fundamental law. (*Ash* v. *Parkinson*, 5 Nev. 35, and the cases cited in the opinion of the court.)

*John R. Kittrell, Attorney-General,* also for the State, argued the case orally:

By the Court, HAWLEY, C. J.:

Petitioner is a merchant engaged in the manufacture and sale of wood and willow ware in the state of California. He was arrested in Virginia city on a warrant regularly issued by a justice of the peace, upon a complaint charging him with selling goods, wares and merchandise without a license, as required by the act of the legislature of this

state, "approved February 20, 1877," the first section of
which, in amending section 67 of the revenue act, provides
that every traveling merchant, agent, drummer or other
person selling or offering to sell any goods, wares or mer-
chandise of any kind, to be delivered at some future time, or
carrying samples and selling, or offering to sell goods,
wares or merchandise of any kind similar to said samples, to
be delivered at some future time, shall pay for such license
twenty-five dollars per month; provided, that nothing in
this section be so construed as to apply to the sale of fruits
or the agricultural products of this state or any other state
or territory of the United States." (Stat. 1877, 79.) The
same section provides that any person so offering any goods,
wares or merchandise for sale without a license, shall be
guilty of a misdemeanor.

The evidence shows that petitioner visited Virginia city
in this state as a traveling merchant, solicited and procured
orders for goods in his line, and sent the orders to the firm
of which he is a member at San Francisco, California, to be
filled. It is admitted that he comes within the provisions
of the act of the legislature; but it is claimed that the act
is unconstitutional and void. It is argued: First; that the
license fee imposed by said act is a tax. Second; that the
act levies an unequal tax in violation of article X, section
1, of the constitution of this state, which declares that "the
legislature shall provide by law for a uniform and equal
rate of assessment and taxation." Third; that it levies an
impost on imports. Fourth; that it is an interference with
inter-state commerce.

1. We are of opinion that the act is a revenue law
imposing a tax upon the business of drummers and travel-
ing merchants, who go from place to place throughout this
state, soliciting orders for goods, wares and merchandise,
and that this state has an undoubted right to tax its own
citizens and citizens of other states coming within its juris-
diction and engaging in any particular business or profes-
sion, and that such a law is not repugnant to said provisions
of our state constitution. The power to tax all the property
and business within this state is an essential attribute of

its sovereignty, and there is no restraint upon its exercise when within constitutional limits, except the responsibility of the members of the legislature to their constituents. That all licenses ought, in justice and fairness, to be as nearly equal and uniform as possible, is one of those self-evident propositions that admits of no argument to the contrary. But the question as to the best method of imposing a license so as to attain that end is, in our opinion, left very much to the good sense and sound judgment of the legislature. It may be that the standard adopted in this case is not as beneficial or equal in all respects as others that might have been selected; but if the legislature has kept within the limits of the constitution, its power is supreme. It is true the legislature might have divided the traveling merchants into classes, and provided that those doing business in the aggregate to the amount of five thousand dollars per month should constitute the first-class, and pay a license of fifty dollars per month; those doing business to the amount of four thousand dollars, and less than five thousand dollars per month, should constitute the second class, and pay a license of forty dollars per month, etc., etc. But even then the tax would be unequal, because the person who sold only four thousand dollars' worth of goods would have to pay the same license as a person who sold four thousand nine hundred and ninety-nine dollars' worth, etc., etc.

It is useless to point out further illustrations, as it is settled beyond all controversy that no revenue law which divides the business of merchants, saloon-keepers, hotel-keepers, etc., etc., into classes is ever framed upon any rule of mathematical equality. Yet, such laws exist in many of the states, and are almost uniformly upheld by the courts.

We are of opinion that section 1 of article 10 of the constitution refers particularly to the levy of *ad valorem* taxes on all property, real and personal, which can and must be comparatively uniform and equal and does not apply to licenses imposed for conducting any business or profession which, from the very nature of the case, cannot be made perfectly uniform and equal.

The following authorities hold that the language of constitutions, similar to ours, refers only to taxes levied upon real and personal property according to its true value: *Peopl*é v. *McCreery*, 34 Cal. 448; *People* v. *Thurber*, 13 Ills. 555; *City of East St. Louis* v. *Wehrung*, 46 Ills. 392; *The Texas Banking and Insurance Company* v. *The State*, 42 Tex, 636; *Blessing* v. *The City of Galveston*, 42 Tex. 642; *Chilvers* v. *The People*, 11 Mich. 50; *Henry* v. *The State*, 26 Ark, 523; *Straube & Lohman* v. *Gordan*, 27 Ark. 625; *Bohler* v. *Schneider*, 49 Ga. 195; *The Home Insurance Company* v. *City Council of Augusta*, 50 Ga. 543; *Adams* v. *Mayor of Sommerville*, Head. 363. But admitting, for the sake of the argument, that the constitution does apply to licenses on business, is not the tax imposed in this case as uniform and equal as the constitution requires? The same license fee is required of every person who engages in the particular business designated by the act.

In the city of *New Orleans* v. *Home Mutual Insurance Company*, where the ordinance under consideration imposed a license upon insurance companies and divided the same into classes and required a license fee from each in proportion to the amount of premiums received, the supreme court say: "The tax imposed is for a license to carry on a business or occupation. It is the price exacted for the privilege to pursue a profession, trade or occupation. The constitution requires that a license tax, as well as a tax on property, shall be equal and uniform. To be equal and uniform, the tax imposed must be the same upon all who engage in the particular profession or calling taxed, without reference to the abilities, fortunes or successes of those engaged in business taxed. * * * The ordinance in question fixes unequal taxes upon persons pursuing the same occupation. It is, therefore, unconstitutional and void." (23 La. An. 449. See also the *State* v. *Endom*, 23 La. An. 663; *Hodgson* v. *City of New Orleans*, 21 La. An. 301.)

From a review of the authorities, it will readily be seen that, in either view of the case as to the meaning of the constitutional provision, the act must be upheld. If we are

correct in holding that the license imposed by the act is a tax upon a business, and not upon property, then it necessarily follows that the question argued by counsel, as to the power of the legislature to exempt any property from state taxation, is not involved in this case, and upon that point we express no opinion.

2. The act is not, in our judgment, in conflict with any of the provisions of the constitution of the United States. The provisions of the act are general in their character, and apply as well to citizens of this state as to citizens of other states; to the fruits and agricultural products of other states as well as of this state. There is no discrimination between the citizens of Nevada and of other states. In this respect the act is essentially different from the acts declared unconstitutional in *Ward* v. *Maryland*, 12 Wall. 418; *Welton* v. *State of Missouri*, 91 U. S. 275; and *Crow* v. *State*, 14 Mo. 295. There is no valid reason why the citizens of other states, who come within our jurisdiction and engage in business in this state, should be exempted from the payment of licenses properly imposed upon our own citizens.

3. In considering the question whether the act is in contravention of those provisions of the constitution which declare that congress shall have the power to regulate commerce among the several states, and that no state shall, without the consent of congress, lay any imposts or duties on imports or exports, the supreme court of the United States has repeatedly declared that the line drawing the limits of state sovereignty in imposing taxation and the duty of the federal government to regulate and protect interstate commerce, is always difficult to be traced; that no general rule can be laid down; that the character of each case must be distinctly kept in mind, and the decisions of the court are based upon the particular facts of each individual case. It is quite difficult, if not impossible, to draw any general line that will mark with any degree of precision where the commercial power of congress ends, and where the power of each state begins.

The case of *Brown* v. *State of Maryland* (25 U. S. Rep.

12 Wheat. 419), upon which petitioner chiefly relies, has no application to the facts of this case. In that case Brown was indicted for having imported and sold a package of dry goods without a license, contrary to the provisions of an act of the legislature of the state of Maryland which required all importers, before the sale of their imported articles, to take out a license. The supreme court of the United States held that a tax on the sale of an article, imported only for sale, is a tax on the article itself; that the importation gave a right to the importer to sell the package in question free from any charge by the state and, consequently, that the act of Maryland was unconstitutional and void, as being repugnant to that article of the constitution which declares that "no state shall, without the consent of congress, lay any imposts or duties on imports or exports," and also to that clause which empowers congress "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes."

The decision of the court turned upon the fact that Brown, being the importer of the package, had the undoubted right to dispose of it, and that this right continued as long as the package remained the property of the importer and was unbroken. In other words, that as a sale is the object of all importation of goods, the power to allow importation necessarily implies the power to authorize the sale of the thing imported; and, therefore, that any penalty imposed for disposing of goods in the character of an importer was in violation of said provisions of the constitution of the United States.

The case of *Brown* v. *State of Maryland* has been repeatedly cited and discussed in subsequent decisions of the court and, while adhering to it as an authority, the court has frequently declared that the principles therein decided ought not to be extended to any case not coming clearly within the facts which there existed. As we have already stated, the facts of that case are not, in our judgment, analogous in any respect to this. It is unnecessary in this case to discuss the question as to the extent of the power given to Congress to regulate commerce, or to review the

authorities relative to the prohibition upon the states from imposing any duty upon imports, because if we are right in the conclusions before stated, that the act is a revenue law imposing a tax upon all persons who engage in a certain business, then it does not come within the reasoning of the court in *Brown* v. *State of Maryland*, and other cases cited by petitioner's counsel. The act does not impose any impost or duty upon imports, and it does not, in our opinion, interfere with the power of congress to regulate commerce among the states.

In the *City of New York* v. *Miln*, which was an action of debt brought in the circuit court of the state of New York by the plaintiff to recover of the defendant, as consignee of a ship, the amount of certain penalties imposed by a statute of that state entitled "An act concerning passengers in vessels coming to the port of New York," the court discuss at length the case of *Brown* v. *State of Maryland*, and in drawing the distinction which existed between the two cases, say: "It is difficult to perceive what analogy there can be between a case where the right of the state was inquired into, in relation to a tax imposed upon the sale of imported goods, and one where, as in this case, the inquiry is as to its rights over persons within its acknowledged jurisdiction. The goods are the subject of commerce; the persons are not. The court did, indeed, extend the power to regulate commerce, so as to protect the goods imported from a state tax after they were landed, and were yet in bulk; but why? Because they were the subjects of commerce, and because, as the power to regulate commerce, under which the importation was made implied a right to sell, that right was complete, without paying the state for a second right to sell, whilst the bales or packages were in their original form. But how can this apply to persons? They are not the subject of commerce; and, not being imported goods, cannot fall within a train of reasoning founded upon the construction of a power given to congress to regulate commerce, and the prohibition to the states from imposing a duty on imported goods." (36 U. S. 11 Pet. 136.)

In *Woodruff* v. *Parham* (8 Wal. 123), which was a case

where the city of Mobile, Alabama, in accordance with a provision in its charter, authorized the collection of a tax on sales at auction and sales of merchandise, capital employed in business and income within the city. Woodruff and others, as auctioneers, received, in the course of their business for themselves, or as consignees and agents for others, large amounts of goods and merchandise, the product of states other than Alabama, and sold the same in Mobile to purchasers in the original and unbroken packages. When the tax-collector demanded the tax, Woodruff refused to pay it, claiming that it was repugnant to the provisions of the constitution of the United States. The court, after a full consideration and review of previous decisions, held that the term "import," as used in the constitution, did not refer to articles imported from one state into another, but only to articles imported from foreign countries into the United States, and that a uniform tax imposed by a state on all sales made in it, whether they be made by a citizen of it or a citizen of some other state, and whether the goods sold are the produce of the state enacting the law or of some other state, are valid. (*Hinson* v. *Lott*, 8 Wall. 148; *Waring* v. *The Mayor*, 8 Wall. 110.)

The act of this state does not contemplate any restriction whatever upon commerce. "The power it asserts," as was said by the supreme court of Indiana, in *Beale* v. *The State*, "is inseparable from sovereignty essential to its existence, and one which all expounders of the constitution admit to have been reserved." (4 Black, 109.)

To pronounce such a law unconstitutional because it might in some imaginable manner affect the operation of commerce would be to surrender the principle that a state has the right, for its support, to impose a tax upon citizens who are conducting business within its jurisdiction. Such a doctrine is not, in our opinion, sustained by the reasoning of any of the cases cited by counsel. On the other hand, while the facts in many of the cases referred to are different from the case at bar, the reasoning of the courts is decidedly in favor of the views we have expressed.

In *Nathan* v. *The State of Louisiana*, it was decided that

tax imposed by a state upon exchange-brokers was not void for repugnance to the constitutional power of congress to regulate commerce.

Justice McLean, in delivering the opinion of the court, says: "The right of a state to tax its own citizens for the prosecution of any particular business or profession within the state has not been doubted. And we find that in every state money or exchange brokers, vendors of merchandise of our own or foreign manufacture, retailers of ardent spirits, tavern-keepers, auctioneers, those who practice the learned professions, and every description of property, not exempted by law, are taxed." * * "The taxing power of a state is one of its attributes of sovereignty. And where there has been no compact with the federal government, or cession of jurisdiction for the purposes specified in the constitution, this power reaches all the property and business within the state which are not properly denominated the means of the general government; and, as laid down by this court, it may be exercised at the discretion of the state. The only restraint is found in the responsibility of the members of the legislature to their constituents. If this power of taxation by a state within its jurisdiction may be restricted beyond the limitations stated, on the ground that the tax may have some indirect bearing on foreign commerce the resources of a state may be thereby essentially impaired. But state power does not rest on a basis so undefinable. Whatever exists within its territorial limits in the form of property, real or personal, with the exceptions stated, is subject to its laws; and, also, the numberless enterprises in which its citizens may be engaged. These are subjects of state regulation and state taxation, and there is no federal power under the constitution which can impair this exercise of state sovereignty." (49 U. S. Rep. (8 How.), 82.)

This power of the state in the exercise of its sovereignty has repeatedly been declared by the state courts, and acknowledged by the supreme court of the United States. (*Gibson* v. *Mason*, 5 Nev. 283; *Raquet* v. *Wade*, 4 Ohio, 107; *Sears* v. *Warren*, 36 Ind. 267; *Harrison* v. *Mayor of Vicksburg*, 3 Smedes & Marshal, 581; *McCullough* v. *State of Mary-*

*land,* 17 U. S. Rep. (4 Wheat.) 428; *City of New York* v. *Miln,* 36 U. S. Rep. (11 Pet.) 138–9; *License Cases,* 46 U. S. Rep. (5 How.), 625; *Passenger Cases,* 48 U. S. Rep. (7 How.) 402, 531; *Woodruff* v. *Parham,* 8 Wal. 137; *Ward* v. *Maryland,* 12 Wal. 428.)

Being unanimously of the opinion that the act is constitutional and valid, we have considered and disposed of the case upon its merits, without reference to the disputed question as to whether this court has jurisdiction of the case under the writ of habeas corpus. Upon this point we express no opinion.

The petitioner is remanded into custody.