## P. J. LANGUILLE *v.* THE STATE.

1. CONSTITUTIONAL LAW. — The power of taxation is inherent in every sovereignty, and in this state has been intrusted by the people to the legislative department of the government, with only such limitations as are expressly prescribed in the Constitution; and this power extends to the enactment of all laws deemed necessary or proper to enforce the collection of the taxes levied, subject only to the constitutional inhibition of cruel and unusual punishments.

2. SAME — OCCUPATION TAXES. — The Constitution of this state empowers the Legislature to impose a tax upon all persons following any occupation, trade, or profession other than agricultural or mechanical pursuits; and by virtue of this power it is competent for the Legislature to make it a penal offense for any person subject to such tax to pursue his occupation without first paying the tax imposed.

3. SAME — PRACTICING LAWYERS. — A license of court to practice law is the grant of a naked privilege, which the state may revoke, or on which it may impose conditions. It is not a contract, nor does it vest rights beyond legislative control, nor confer immunity from such occupation tax as may be imposed upon practitioners of law.

4. SAME. — The occupation tax imposed upon persons practicing law in this state, and the enforcement of its payment by penal proceedings, are enactments clearly within the scope of the powers conferred upon the Legislature as well by the Constitution of 1869 as by the present one.

APPEAL from the District Criminal Court of Galveston. Tried below before the Hon. G. COOK.

The opinion states the case.

*L. E. Trezevant*, for the appellant. Our proposition is that the act in question is unconstitutional, and the indictment charges no offense.

The Legislature declares that no person shall follow his occupation without paying the tax imposed upon the pursuit of that occupation ; that the pursuit of his occupation by any citizen without a license is a misdemeanor — a crime ; that if he pay the tax, he may have the privilege of following his occupation ; that he then has the privilege of making his living without let or hinderance, and that, too, even though he has committed the crime denounced by the law.

It will be seen that the act is not a police regulation, having in view the regulation of the manner of exercising the right of pursuing the occupation, nor the punishment or the reform of the offender, but is simply a mode of collecting the tax ; the license is a mere receipt for the tax, and not a permission under the police power to follow the occupation under certain conditions and restrictions.

It is not the manner of exercising the right that is within the contemplation of the law ; it is the very right itself that is in question. The Legislature declares that the citizen shall not have or enjoy the right at all unless he pays the tax. The exercise of the right is made to depend upon the will of the Legislature. The right to acquire property — the right to earn a living — is made a privilege, to be obtained only by paying a tax ; otherwise, it is made a crime.

The question now is, Is the acquisition of property, is the right to earn a living, a privilege dependent upon the will of the Legislature? Can the Legislature thus deprive the citizen of this right? Can the Legislature make the exercise of this right under any circumstances or conditions, except when it is an injury to others, a crime?

Though such a tax is wrong in principle, we concede that the Legislature may impose the tax; we concede that the Legislature may collect the tax. But it is to be borne in mind that, in adopting a remedy for the collection of the tax, there are certain fundamental principles that cannot be ignored, but must be recognized as the shield and security of the citizen, guaranteed to him by the law of nature and by the organic laws of the land.

These principles are that the exercise of a natural, absolute right by the citizen — as, the right of acquiring property — cannot be made, by law, the occasion for depriving him of that right. In other words, the life, liberty, and the property of the citizen cannot be taken from him by any law enacted for the express purpose of depriving him of these rights; since any law so enacted is not " the law of the land." As is said by the Court of Appeals in *Wynehamer* v. *The People*, 13 N. Y. 420, the declaration that " no person shall be deprived of life, liberty, or property without due process of law" necessarily imports that the Legislature cannot make the mere existence of the rights secured the occasion of depriving a person of any of them, even by the forms which belong to " due process of law." For if it does not necessarily import this, then the legislative power is absolute. To provide for a trial to ascertain whether a man is in the enjoyment of any of these rights, and then, as a consequence of finding that he is in the enjoyment of it, to deprive him of it is doing indirectly just what is forbidden to be done directly, and reduces the constitutional provision to a nullity. For instance, a law

which should make it a crime to live in, or to rent, or to sell their houses would be beyond the power of the Legislature.    It would be so upon the ground that no man can be deprived of his life, liberty, or property without due process of law, and that the right to live in, or to sell, one's house, and not to be punished for so doing under any conditions, is put, by the declaration of right, beyond the power of legislative interference.    There may, then, in respect to offenses attempted to be created by legislation, a question arise capable of being considered by courts of justice — whether the thing forbidden is an essential part of either of those secured private rights, so essential that, without it, the right cannot exist at all.    There is a clear distinction between the exercise of the conceded power to regulate the manner of enjoying these absolute rights on the one hand, and, on the other, the exercise of a prohibited power to infringe upon and to extinguish those rights.    These absolute rights cannot be destroyed by legislation ; their enjoyment is not an offense, and legislation cannot make it an offense, under any circumstances or conditions, other than by the police power, which seeks alone to regulate the mode and manner of their enjoyment.    There is no pretense that the act in question seeks to regulate the manner of enjoying the right of acquiring property or of pursuing an occupation ; but it seeks to abolish the very right itself, since the exercise of this right is prohibited, not under the police power, but under conditions which make the exercise of the right a privilege, to be enjoyed by those only who comply with those conditions, thus making the exercise of the right to depend upon the legislative will ; and if the Legislature may impose such conditions as to transmute this right into a privilege, it may, of course, impose such conditions that so far infringe upon this right as to extinguish it *in toto.*

Again, there are certain other fundamental principles that

are intended to protect the citizen. The Legislature cannot change innocence into guilt or punish it as a crime, or take from A his property and give it to B, nor declare that the right to acquire property, when not done to the injury of another, shall be deemed to be, under any conditions, a crime; and that the life, liberty, and property of the citizen cannot be taken from him, except by such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs. The Legislature may, as a means of coercing the payment of the tax, or as a remedy for its collection, take the property of the citizen by proper legislation; it may, by law, deprive him of such civil and political rights as are not guaranteed to him by the Constitution, as a means of coercing the payment of the tax; but, we submit, it cannot send him to jail; it must allow him, after his day's work is done, though he has not — mayhap can not — paid his tax, homeward to plod his weary way, where he may forget his labor and his toil, if he has a home; if not, and he is a vagrant, then send him to jail as a nuisance.

The question recurs, Is the pursuit of an occupation, or the right of acquiring property — not the mode and manner of doing it — a privilege, to be bought and secured by those only who pay the tax, and a crime in those who do not, or can not, pay the tax?

There are certain rights which belong to us as freemen; we do not derive all our rights from legislative grant; we have some which belong to us by nature, and as citizens of a free country. Such is the right of acquiring and holding any species of property we choose, of wearing whatever garments we choose, of pursuing such occupations, not *mala prohibita*, as we choose. These rights we had before the Constitution was framed, and may be enjoyed as perfectly with-

out as with the aid of a grant from the Legislature. The Constitution was framed for the purpose of guarding and protecting these rights as we originally had them by the law of nature. The Legislature cannot, therefore, convert these rights into privileges by any process of legislative alchemy. If such magical transmutations could be effected, nothing would be easier than, by the enactment of sumptuary laws and acts creating privileges, to transform us at one sweep from citizens of a republic into the mere serfs of the soil. The Legislature has not, says the Supreme Court, in *Stevens* v. *The State*, 2 Ark. 300, the power to prohibit any person from becoming a merchant or a liquor-dealer until he shall have paid a tax as such, because it is parcel of the public liberty of every citizen to employ himself or his capital in such manner as he may choose, provided he does not invade the equal rights of another. A right common to every citizen cannot — by being first prohibited and then allowed to be enjoyed by those only as will first comply with certain conditions prescribed by the statute — be created a privilege. The Legislature cannot confer upon us the privilege of doing what we already, *ex commune juri*, had the right to do.

Privileges are not so created. A privilege is a right or franchise created by legislative grant that cannot be exercised by any citizen without some statutory provision conferring upon some one or more individuals the right of doing some particular thing. It is not a right existing before, and common to all, but now prohibited, unless upon the payment of a sum of money or tax into the public treasury — the very thing which the act in question seeks to do.

In *Barker* v. *The People*, 3 Cow. 686, the court says: "Though no crime is defined in the Constitution, and no species of punishment is specially forbidden to the Legislature, yet there are numerous regulations of the Constitution which must operate as restrictions upon the general power over crimes." The whole Constitution must be sup-

ported, and all its powers and rules must be reconciled into concord.

A law which should declare it a crime to exercise any fundamental right of the Constitution — as, the right of acquiring property, we add — would infringe an express rule of the system, and would, therefore, not be within the general power over crimes. Many rights are plainly expressed and intended to be inviolable in all circumstances. A law that a criminal should, as a punishment for his offense, forfeit the right of trial by jury, would contravene the Constitution, and a deprivation of this right could not be allowed in the form of a punishment. Any other right thus secured, as universal and inviolable, must equally prevail against the power of the Legislature to select and prescribe punishment.

*George McCormick*, Assistant Attorney-General, for the State.

Ector, P. J. This is a prosecution for failure to pay the occupation tax due to the state by appellant as a practicing attorney at law, as provided under the act making it penal to pursue any calling, profession, or occupation upon which a tax is payable without paying such tax; approved March 13, 1875. Gen. Laws Fourteenth Legislature, 94.

The charging part of the indictment is as follows, to wit:

" That P. T. Languille, late of the county aforesaid, on the sixth day of the month of October, in the year of our Lord one thousand eight hundred and seventy-six, in said county of Galveston, in the state of Texas, with force and arms, then and there unlawfully and willfully did pursue and follow the occupation of practicing law (the same being an act taxed by law) without first having obtained a license therefor; and that the said P. T. Languille has not paid said tax, or obtained a tax receipt or license therefor;

contrary to law, and against the peace and dignity of the state."

The defendant filed a motion .to quash the indictment, " because the said indictment does not charge any offense known to, or against, the laws of the state of Texas, and is not sufficient in law," etc.  The motion was overruled ; and this action of the court is the first error assigned by the defendant.

The 3d section of the act of 1873, entitled "An act regulating taxation," provides that there shall be levied and collected, from every person practicing law, $10.  Gen. Laws Thirteenth Legislature, 200.

The 3d section of the act of 1876, entitled "An act to regulate taxation, and fix the rate of the same," also provides that there shall be levied and collected, from every person practicing law, $10.  Gen. Laws Fifteenth Legislature, 242.

The laws of 1873 and of 1876, which we have cited, provides that the receipt of the proper officer shall be, *prima facie*, evidence of the payment of such tax, and they both also provide that no occupation license shall issue for a less period than three months.  The 1st section of the act of 1875, under which this prosecution was instituted, is as follows :

"*Be it enacted by the Legislature of the state of Texas*, that any person who shall pursue or follow any occupation, calling, or profession, or do any act taxed by law, without first obtaining a license therefor, shall be deemed guilty of a misdemeanor, and, upon conviction before any court of competent jurisdiction, shall be fined in any sum not less than the amount of the tax so due, and not more than double that sum ; provided that this act shall not be construed to affect any civil remedy to enforce the collection of such taxes ; and provided, further, that a tax receipt for

said tax from the proper officer shall be a sufficient license to follow such occupation, calling, or profession."

We do not think that the indictment is subject to the objection urged against it.

The evidence shows that the defendant, on October 6, 1876, and prior thereto, in the county of Galveston, did pursue the occupation of practicing law without having paid the tax for any portion of said year. His defense was that, having been licensed by the District Court of Galveston County in the year 1873, and by the Supreme Court of this state in 1874, he was authorized to practice law in all the courts of the state, and had a legal right to do so, without being taxed; and if liable for the tax at all, that the payment could not be enforced against him in a criminal action; that a state cannot license an occupation and afterwards make it penal to pursue it; that appellant has what may be termed a vested right to pursue his occupation, which cannot be taken away from him, etc.

The license to practice law is not a contract investing the person to whom it is granted with rights which cannot be interfered with by the state. It is the naked grant of a privilege, which the state may revoke, or may impose such conditions upon its exercise as may be demanded by the public interest.

In the case of *Simmons* v. *The State*, 12 Mo. 268, the appellant was indicted under an act making it a penal offense to practice law without paying the tax imposed by law. The Supreme Court of Missouri holds that the act of the Legislature imposing a tax upon lawyers is constitutional. We make the following extract from the opinion: " Does the law in question impair the obligation of a contract? Can the license to practice law, granted to an individual by a judge of the Circuit Court, under a law of the state, be construed to be a contract vesting such individual

with rights which the General Assembly cannot interfere with? We apprehend it is beyond the power of the most refined sophistry to establish such a proposition. A contract has been defined to be ' an agreement,' upon sufficient consideration, to do or not to do a particular thing.' 2 Bla. Com. 446. 'An agreement in which a party undertakes to do or not to do a particular thing.' 4 Wheat. 197. 'A deliberate engagement between competent parties, upon a legal consideration, to do or to abstain from doing some act.' Story on Con. 1. None of the essential elements of a contract are to be found in the grant of license to practice law; there is no engagement between the state and the applicant for license that he will follow the practice of the law for a livelihood; no legal consideration is paid the state for the license. The grant of the license is a mere naked grant of a privilege, without consideration, and which the applicant may or may not, at his option, avail himself of. Therefore the state may revoke the privilege granted, or may impose such conditions upon its exercise as are deemed proper, or demanded by the public interest."

The power of taxation is inherent in every sovereignty, and without it no constitutional government, that has for its object the advancement of civil liberty, can exist. Cooley's Const. Lim. 479, and cases there cited. "A tax is a contribution imposed by the government on individuals for the service of the state." Blackwell on Tax Titles, 1. Money is properly considered as the vital principle of the body politic — as that which sustains its life and motion, and enables it to perform its most essential functions. In this state the taxing power has been intrusted by the people to the legislative department of the government, with such limitations and restrictions only as are expressly reserved by the Constitution. As revenue is essential to the existence of every government, it follows that the power to levy taxes necessarily carries with it the power to enact all

laws necessary and proper to enforce their collection, in such manner as the exigencies of the government may require. If it be doubtful or questionable whether the Legislature has violated its constitutional limitations, the courts cannot interfere, although they may not be satisfied that the act is constitutional. *Twitchell* v. *Blodgett*, 13 Mich. 162; *Fletcher* v. *Peck*, 6 Cranch, 87; *City of Atchison* v. *Bartholow*, 4 Kan. 131; Cooley's Const. Lim. 171, 182, and numerous cases there cited; *Southerland* v. *De Leon*, 1 Texas, 250; *Legal Tender Cases*, 12 Wall. 531.

"A tax on the privilege of carrying on a business or employment will commonly be imposed in the form of an excise tax on the license to pursue the employment; and this may be a specific sum, or a sum whose amount is regulated by the business done, or income or profits earned. Sometimes small license fees are required, mainly for the purpose of regulation; but, in other cases, substantial taxes are demanded, because the persons upon whom they are laid would otherwise escape taxation in the main, if not entirely. Instances of hawkers, peddlers, auctioneers, etc., will readily occur to the mind. The form of a license, though not a necessary, is a convenient, form for such a tax to assume, because it then becomes a condition to entering upon the business or employment, and is collected without difficulty. But it is equally competent to impose and collect the tax by the usual mode." Cooley on Tax. 21.

Again, this able jurist and distinguished commentator of the law says, in the same work: "The methods in which business shall be taxed are also in the legislative discretion. The taxes which are the most customary are: (1) on the privilege of carrying on the business; (2) on the amount of business done; (3) on the gross profits of the business; (4) on the net profits, or profits divided. But the taxes may be measured by other standards prescribed for the purpose, as well as these. * * * A tax on the privilege

of following any particular employment is usually confined to those which in some particular are exceptional, either because supposed to be especially profitable, or because they require special regulations, or because the privilege is in the nature of a franchise, or because they supply a demand, so that the burden they impose will be generally distributed. But no employment is absolutely exempt from the liability to be taxed. The necessities of the government may require that the lowest employment as well as the most lucrative shall contribute to its support, and if any is exempted, motives of policy will govern the discrimination. * * *

"*Practitioners of Law and Medicine.* These are frequently taxed a specific sum upon the privilege of pursuing their calling for a year, or other specified time." *Ibid.* 384, 385, 388.

That a tax upon practitioners of law may be constitutionally imposed in this state, we have not the least doubt. The Constitution of 1869, and that of 1876, of this state both say that the Legislature shall have power to tax all persons pursuing any occupation, trade, or profession, provided that the term " occupation " shall not be construed to apply to pursuits either agricultural or mechanical. Const. 1869, art. 12, sec. 19 ; Const. 1876, art. 8, sec. 1.

The current of decisions in this country seems to leave no doubt that unless the levy of such taxes was absolutely prohibited by the Constitution, such right would exist without a constitutional permission. And, in the language of Chief Justice Marshall, the power of taxing the people and their property is essential to the very existence of the government, and may legitimately be exercised on the objects to which it is applicable to the utmost extent to which the government may choose to carry it. The security against its abuse is the structure of the government itself — the influence of the constituents over their representatives being

the safeguard against its abuse. *McCulloch* v. *The State of Maryland*, 4 Wheat. 316.

The Court of Appeals of Virginia, in the case of *Ould & Garrison* v. *City of Richmond*, 23 Gratt. 464, where the question was as to whether the council of the city of Richmond could levy a tax upon lawyers as such, says: "It must always be conceded that the proper authority to determine what should, and what should not, properly bear the public burden is the legislative department of the state. This is true not only of the state at large, but it is true also in respect to each municipality or political division of the state. But these municipal corporations have only such powers as the Legislature of the state confers on them. Cooley on Tax. 488. And their powers are controlled by the Constitution of the United States and of the state."

In the case of *Nelson* v. *The State of Louisiana*, Justice Nelson, in delivering the opinion of the court, says: "The right of a state to tax its own citizens for the prosecution of any particular business or profession within the state has not been doubted." 8 How. 82. See, also, Ex parte *John B. Robinson*, 12 Nev. 263, and authorities there cited.

We further believe that the state of Texas has the power to enforce the collection of such taxes as she may deem necessary and proper, keeping within constitutional limits, and that the Legislature acted clearly within the scope of its powers in making it a penal offense for any person, except mechanics or farmers, to pursue or follow his occupation, calling, or profession, or do any act taxed by law, without having obtained a license therefor, or without having paid his occupation tax. In tax laws, both state and Federal, penalties are often imposed for delinquencies, sometimes for failing to give in property for taxes, or in order to hasten assessment; and they are also imposed as a punishment for frauds, evasions, or neglect of duty. Great use is made of penalties in the Federal tax laws for the collection of customs

and internal revenue duties. The justification for this is the supposed necessity of the case, and the almost absolute impossibility of securing a collection of the revenues without resort to these extreme measures. In some cases they are imposed by taxing officers; in others they are recovered by suit or indictment.

If the state has the power to impose a license tax as a condition precedent to permission to carry on such business, she has the power to enforce the collection of such tax as she may deem proper; otherwise, the power to impose the tax would be inoperative and useless. The only limitation upon this power to impose a penalty is to be found in section 13 of article 1 of the Constitution, which prohibits cruel and unusual punishment. To say that a state can impose a penalty and cannot enforce its payment as she deems best is to deny her sovereignty.

We think that, both upon the law and the evidence, the court acted properly in giving judgment against the defendant. The judgment of the lower court is, therefore, affirmed.

*Affirmed.*