Mr. Justice McLEAN
 

 delivered the opinion of the court.
 

 This suit is brought before us, by a writ of error to the Supreme Court of Louisiana.
 

 By an act of the Legislature of Louisiana, of the 26th of
 
 *80
 
 March, 1842, entitled “ An act relative to the revenue of the State,” it is provided in the ninth section, that “each and every money or exchange broker shall hereafter pay an annual tax of $ 250 to the State, in lieu of the tax heretofore imposed on them.” The defendant below having failed to pay the tax for two years, a suit was 'brought against him in the District Court of the State, in which a judgment for five hundred dollars was rendered. That judgment, on an appeal to the Supreme Court of the' State, was affirmed. The defence made Was, that the sole business of the defendant was buying and selling foreign bills of exchange, which are instruments of commerce, and that the tax is repugnant to the constitutional power of Congress “ to regulate commerce with foreign nations and among the several States.”
 

 This is not a tax on bills of exchange. Under the law, every person is free to buy or sell bills of exchange, as may be necessary in his business transactions; but he is required to pay the tax if he engage in the business of a money or an exchange broker.
 

 The right of a State to tax its own citizens for the prosecution of any particular business or profession, within the State, has not been doubted. And we find that in every State money or exchange brokers, venders of merchandise of our own or foreign manufacture, retailers of ardent spirits, tavern-keepers, auctioneers, those who practise the learned professions, and every description of property, not exempted by law, .are taxed.
 

 As an exchange broker, the defendant had a right to deal in every description of paper, and in every kind of money; but it seems his business was limited to foreign bills of exchange. Money is admitted to be an instrument of commerce, and so is a bill of exchange ; and upon this ground, it is insisted that a tax upon an exchange broker is a tax upon the instruments of commerce.
 

 What is there in the products of agriculture, of mechanical ingenuity, of manufactures, which may not become the means of commerce ? And is the vender of these products exempted from State taxation, because they may be thus used ? Is a tax upon a ship, as property, which is admitted to be an instrument of commerce, prohibited to a State ? May it not tax the business of ship-building, the same as the exercise of any other mechanical art ? and also the traffic of ship-chandlers, and others, who furnish the cargo of the ship and the necessary supplies? There can be but one answer to these questions. No one can claim an exemption from a general tax on his
 
 *81
 
 business, within the State, on the ground that the products sold may be used in commerce.
 

 No State can tax an export or an import as such, except under the limitations of the Constitution. But before the article becomes an export, or after it ceases to be an import, by being mingled with other property in the State, it is a subject of taxation by the State. A cotton-broker may be required to pay a tax upon his business, or by way of license, although he may buy and sell cotton for foreign exportation.
 

 A bill of exchange is neither an export nor an import. It is not transmitted through the ordinary channels of commerce, but through the mail. It is a-note merely ordering the payment of money, which may be negotiated by indorsement, and the liability of the names that are on it depends upon certain acts to be done by the holder, when it becomes payable.
 

 The dealer in bills of exchange requires capital and credit. He generally draws the instrument, or it is drawn at his instance, when he is desirous of purchasing it. The bill is worth more or less,' as the rate of exchange shall be between the place where it is drawn and where it is made payable. This rate is principally regulated by the expense of transporting the specie from the one place to the other, influenced somewhat by the demand and supply of specie. Now the individual who uses his money and credit in buying and selling bills of exchange, and who thereby realizes a profit, may be taxed by a State in proportion to his incpme, a§ other persons are .taxed, or in the form of a license. He is not engaged in commerce, but in supplying an instrument of commerce. He is less connected with it than the ship-builder, without whose labor foreign commerce could not be carried on.
 

 In the case of Briscoe
 
 v.
 
 The Bank of the Commonwealth of Kentucky, 11 Peters, 257, this court held that a State has power to incorporate a bank; and this power has been exercised by every State in the Union, except where it has been prohibited by its constitution. And the banks established, it is believed, have been, without exception, authorized to deal m foreign bills of exchange. And this court held in Providence Bank
 
 v.
 
 Billings and Pitman, 4 Peters, 514, that a State had power to tax a bank, there being no clause in the charter exempting it from taxation. In the case of The Bank of Augusta
 
 v.
 
 Earle, 13 Peters, 519, it was decided that the bank established in Georgia, having a right in its charter to deal in bills of exchange, could, through its agent and the comity of Alabama, buy and sell bills in that State.
 

 If a tax on the business of an exchange broker, who buys
 
 *82
 
 and sells foreign bills of exchange, be repugnant to the commercial power of the Union, all taxes on banks which deal in bills of exchange, by a State, must be equally repugnant.
 

 The Constitution declares that no State shall impair the obligations of a contract, and there is no other limitation on State power in regard to contracts. In determining on the nature and effect of a contract, we look to the
 
 lex loci
 
 where it was made or where it was to be performed. And bills of exchange, foreign or domestic, constitute, it would seem, no exception to this rule. Some of the States have adopted the law merchant, others have not. The time within which a demand must be made on a bill, a protest entered, and notice given, and the damages to be recovered, vary with the usages and legal enactments of the different States. These laws, in various forms and in numerous cases, have been sanctioned by this court. Indorsers on a protested bill are held responsible for damages, under the law of the State where the indorsement was made. Every indorsement on a bill is a new contract, governed by the local law. Story’s Conflict of Laws, 314.
 

 For the purposes of revenue, the Federal government has taxed bills of exchange, foreign and domestic, and promissory notes, whether issued by individuals or banks. Now the Federal government can no more regulate the commerce of a State, than a State can regulate the commerce of the Federal government ,• and domestic bills or promissory notes are as necessary to the commerce of a State, as foreign bills to the commerce of the Union. And if a tax on an exchange broker, who deals in foreign bills, be a regulation of foreign commerce, or commerce among the States, much more would a tax upon State paper, by Congress, be a tax on the commerce of a State.
 

 The taxing power of a State is one of its attributes of sovereignty. And where there has been no compact with the Federal government, or cession of jurisdiction for the purposes specified in the Constitution, this power reaches all the property and business within the State, which are not properly denominated the means of the general
 
 government;
 
 and, as laid down by this court, it may be exercised at the discretion of the State. The only restraint is found in the responsibility of the members of the legislature to their constituents.
 

 If this power of taxation by a State within its jurisdiction may be restricted beyond the limitations stated, on the ground that the tax may have some indirect bearing on foreign commerce, the resources of a State may be thereby essentially impaired. But State power does not rest on a basis so undefinable. Whatever exists within its territorial limits in the form
 
 *83
 
 of property, real or personal, with the exceptions stated, is subject to its laws; and also the numberless enterprises in which its citizens may be engaged. These are subjects of State regulation and State taxation, and there is no Federal power under the Constitution which can impair this exercise of State sovereignty.
 

 We think the law of Louisiana- imposing the tax in question is not repugnant to any power of the Federal government, and consequently the judgment of the Supreme Court of the State is affirmed.
 

 Order,
 

 This cause came on to be heard on the transcript of the record from the Supreme Court of the State of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Supreme Court in this cause be, and the same is hereby, affirmed, with costs.