## *Ex parte* HANSON.

### (*District Court, D. Oregon.* June 24, 1886.)

1. **LICENSE TO SELL GOODS.**
   A charge on a license to sell goods is a tax thereon.

2. **TAX ON GOODS, WHEN A REGULATION OF COMMERCE.**
   A tax imposed by one state on the sale of the products of another state within its limits, which, in purpose or effect, discriminates against said products, and in favor of its own, is a regulation of commerce among the states, and therefore void.[1]

3. **SAME—WHEN LAWFUL.**
   A tax or charge imposed equally on the products of the state imposing it, and those introduced from other states, is not a regulation of commerce, but only an exercise of the taxing power of the state.

4. **DRUMMER ORDINANCE.**
   An ordinance of the city of Portland requires every person who goes from place to place therein, soliciting the purchase of goods, without reference to the place of their product or manufacture, or *offering to sell or deliver the same by sample or otherwise*, to take out a license, and pay therefor $25 per quarter, or so much a day for a less time. *Held* that, on its face, the ordinance did not discriminate against the products of any state, and therefore it was not a regulation of commerce, but only a tax; and its character in this respect is not affected by the fact that in some or many instances the revenue derived from the tax may be paid largely or wholly by the products of other states, because the same are not produced in Portland, or the producer therein, having less need for the services of a drummer, may not employ one.

5. **HABEAS CORPUS FOR THE DELIVERANCE OF PERSON HELD UNDER AUTHORITY OF A STATE.**
   The circuit and district courts of the United States have authority to discharge a person by *habeas corpus* from imprisonment under the authority of

[1] See note at end of case.

a state contrary to the constitution or a law or treaty of the United States; but, when such person is in custody only on the charge of an offense against the laws of the state, the court may, in its discretion, refuse to discharge him before trial, or even afterwards, and until the case has been heard in the state court of last resort.

6. POWER TO REGULATE COMMERCE.

*Quære*, does the power of congress over commerce include commerce between a state of the Union and a territory thereof?

Petition for *Habeas Corpus.*

*H. Todd Bingham* and *Edward W. Bingham,* for petitioner.

*Zera Snow* and *Albert H. Tanner,* for respondent.

DEADY, J. This is a petition by Emilius W. Hanson for a writ of *habeas corpus.* The amended petition states that the petitioner is unlawfully restrained of his liberty by Samuel B. Parish, the chief of police of the city of Portland; that the petitioner is a resident of Seattle, Washington, and is the salesman of the Northwestern Cracker Company of that place, which is there engaged in the manufacture of breadstuffs, and in the sale of the same there and elsewhere; that, as the agent of said company, the petitioner, on May 20, 1886, at Portland, offered to sell breadstuffs, manufactured thereby, upon an agreement that the same were to be manufactured in Seattle, and shipped thence to the purchasers in Portland, whereupon said Parish arrested the petitioner because he did not have a license from Portland "as a drummer and commercial traveler" for selling goods as aforesaid, as required by ordinance 4817, entitled "An ordinance to license, tax, and regulate drummers and commercial travelers," and approved March 4, 1886; that manufacturers or merchants of Portland are not taxed for the privilege of selling goods at their places of business therein, and do not employ persons to go about, from place to place, within said town, offering to sell goods by sample or otherwise; that said ordinance was designed and intended to discriminate in favor of goods held in Portland for sale, against goods held elsewhere and offered for sale therein, and, by reason of the tax thereby imposed on the latter, does in fact so discriminate, and is therefore in conflict with the constitution of the United States, which gives congress the power to regulate commerce among the states, and void; and the proceeding thereunder against the petitioner is therefore without due process of law, and contrary to the fourteenth amendment.

Briefly stated, the ordinance in question requires "drummers and commercial travelers" to pay a license of $25 per quarter, or $3 per day for less than six days, or $2 per day for any greater number of days; and, in default thereof, to be punished by a fine of not less than $10 nor more than $200, or by imprisonment not less than 5 nor more than 90 days. "A drummer or commercial traveler" is defined by the ordinance as follows:

"All persons who shall go about, from place to place, within the corporate limits of the city of Portland, soliciting the purchase of goods, wares, or

merchandise, or offering to sell, barter, or deliver any goods, wares, or merchandise, by sample or otherwise, are hereby defined [declared] to constitute drummers and commercial travelers."

Notice of the application was required to be given to the city attorney, who appeared and contested the right to the writ.

A tax or charge for a license to sell goods is, in effect, a tax on the goods themselves. *Welton* v. *Missouri*, 91 U. S. 278. It is now well settled that a tax imposed by a state, directly or indirectly, on the products of another state, when brought within its limits, or offered for sale therein, which in effect discriminates against said products, and in favor of those of the state imposing the tax, is a regulation in restraint of commerce among the states, and as such is a usurpation of the power conferred on congress by the constitution of the United States. *Ward* v. *Maryland*, 12 Wall. 418; *Welton* v. *Missouri*, 91 U. S. 275; *Guy* v. *Baltimore*, 100 U. S. 434; *Walling* v. *Michigan*, 116 U. S. 446; S. C. 6 Sup. Ct. Rep. 454. On the other hand, where the tax or charge is imposed equally on the products of the state imposing it and those introduced from other states, the law or ordinance imposing the same is not a regulation of commerce, but only a legitimate exercise of the taxing power of the state. *Woodruff* v. *Parham*, 8 Wall. 123; *Hinson* v. *Lott*, Id. 148; *In re Rudolph*, 6 Sawy. 295; S. C. 2 Fed. Rep. 65; *Ex parte Robinson*, 12 Nov. 263.

On its face this ordinance makes no discrimination between the products of this state and any other state or country. "All persons" who engage in the business of going about from place to place within the city soliciting the purchase of goods, without any reference to the place of their production or manufacture, are required to take out the license and pay the tax. The agent of the cracker company of Portland and the cracker company of Seattle are each included in the terms of the ordinance, and alike punishable for its violation.

But admitting this, counsel for the petitioner insist that this ordinance does in fact discriminate against the Seattle cracker company, because the Portland cracker company, having a place of business in the city, does not have the same need for an agent to go from house to house and take orders for goods, and therefore is not likely to employ one, and may thus escape the payment of the tax. A court will look behind or beyond the mere words of a statute, however chosen or arranged, to see if, in its actual operation, it must necessarily result in discrimination. But this ordinance is not obnoxious to the charge of discrimination in its operation because, under the circumstances, the Seattle company is more likely to employ a drummer than the Portland one. Indeed, this very argument seems to have been considered by the supreme court in the analogous case of *Hinson* v. *Lott, supra*. In that case a statute of Alabama imposing a tax on dealers in spirituous liquors of 50 cents a gallon on each gallon offered for sale within the state, and brought there from without it,

was held valid, because the same statute also provided that a tax of 50 cents a gallon should be paid by the Alabama distiller on each gallon of whisky and brandy manufactured in the state from fruit. The tax on the distiller was considered the equivalent of that imposed on the dealer, so that there was no discrimination against the latter, neither in purpose nor effect. The terms "whisky" and "brandy" were considered the equivalent of "spirituous liquors," and it was assumed that they were not manufactured in Alabama from any article but "fruit." Mr. Justice NELSON dissented from the opinion of the court in this and the preceding case of *Woodruff* v. *Parham,* *supra,* and, in the course of his opinion, sought to maintain that the Alabama statute, however well intended or phrased, did, by reason of the peculiar circumstances of the case, operate unequally; and result in a discrimination against the spirituous liquors not produced in the state. By way of illustration, he said, (8 Wall. 146 :)

"Alabama is a cotton-growing state, and depends upon the northern states bordering on the Mississippi and the Ohio for most of her corn, wheat, and flour. She cannot, therefore, be a state largely engaged in the manufacture of whisky. The tax, so far as regards her own people, is probably nearly nominal."

But the doctrine of the cases appears to be that so long as the product or business of the state imposing the tax is made to pay its just proportion of the same, the act providing therefor is not obnoxious to the charge of discrimination, although the gross revenue derived by the state from the tax may be largely collected from the product or business of other states. As I read the case, the mere accidental circumstance that Alabama consumed more whisky than she produced, and therefore her whisky tax was, for the greater part, collected from the northern product, did not invalidate the tax, provided the Alabama product, whether much or little, paid at the same rate as the other.

The power of this court to issue the writ of *habeas corpus* when any person is restrained of his liberty in violation of the constitution of the United States, is given by congress in unqualified language. Rev. St. §§ 751–755. And any one imprisoned or in custody by authority of a state, under a void or unconstitutional act thereof, is restrained of his liberty in violation of the fourteenth amendment, which forbids any state to "deprive any person of life, liberty, or property without due process of law." *In re Lee Tong,* 9 Sawy. 335; S. C. 18 Fed. Rep. 253; *In re Wan Yin,* 10 Sawy. 538; S. C. 22 Fed. Rep. 705. As was said by Mr. Justice BRADLEY in *Ex parte Siebold,* 100 U. S. 376: "An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but it is illegal and void, and cannot be a legal cause of imprisonment." In *Ex parte Royall,* 6 Sup. Ct. Rep. 734, this subject has lately been considered by the supreme court. This conclusion is reached: That while the circuit and district courts have full authority to issue the writ of *habeas corpus* in all cases where a party is

restrained of his liberty "in violation of the constitution, or a law or treaty of the United States," by the authority of a state, either before or after trial thereby, and "dispose" of him "as law and justice require," still the court has a discretion in the premises, which should be exercised so as not to disturb the relations between the courts of the Union and the state "by unnecessary conflict between courts equally bound to guard and protect rights secured by the constitution;" and that "where a person is in custody under process from a state court of original jurisdiction only, for an alleged offense against the laws of such state, and it is claimed that he is restrained of his liberty in violation of the constitution of the United States," the court has discretion whether it will discharge him on *habeas corpus* before trial, or even afterwards, and before the case is finally heard in the state court of the last resort; subject, however, "to any special circumstances requiring immediate action." On the authority of this case this court might, and probably ought, even if it thought the ordinance invalid, to refuse the writ for the present, and leave the party to his trial in the state court. No special circumstance is shown calling for the immediate intervention of this court.

There is also a question whether the clause in the constitution (article 1, § 8) giving congress power "to regulate commerce * * * among the several *states*," includes the commerce between a state and *territory* of the United States. The latter is a *state*—a collection of persons occupying a certain territory, with a legislative and executive organization—in the large and general sense of the word, *In re Bryant*, 1 Deady, 118; *The Ullock*, 9 Sawy. 634; S. C. 19 Fed. Rep. 207; *The Abercorn*, 26 Fed. Rep. 877. But a territory is not a member of the Union formed by the constitution, and "the several states" referred to therein among whom congress may regulate commerce are only those embraced in such Union. Congress has power to regulate commerce in the territories by virtue of its general power over them. But it has no power over the internal commerce of a state, and its power over the external commerce thereof is apparently qualified by the condition that it is with a foreign state, a state of the Union, or an Indian tribe of the United States, in which category the territory of Washington is not included. With this suggestion of the question, I leave it.

The writ is denied, and the petition dismissed on the ground of the validity of the ordinance.

### NOTE.

In the case of Speer v. Com., 23 Grat. 936, a state statute required a license to be obtained by every person selling goods by sample who was not a "resident merchant," and the court held that as a man may be a resident citizen and not a resident merchant, and the reverse, there was no discrimination in favor of citizens of the state; that, therefore, the statute was not unconstitutional, and that such statute was not a regulation of commerce between the states.

A state statute, imposing a tax upon traveling agents and merchants, who go about soliciting orders for goods, wares, and merchandise, does not impose any impost or duty upon imports, does not interfere with the federal power to regulate interstate commerce, and is not unconstitutional. Ex parte Robinson, 12 Nev. 263.

A municipal ordinance exacting a license fee from dealers or peddlers not residing in, or who sell goods not manufactured in, the county, is unconstitutional. City of Marshalltown v. Blum, 58 Iowa, 184; S. C. 12 N. W. Rep. 266.

It is the settled doctrine of the United States supreme court at this day that a state can no more regulate or impede commerce among the several states than it can regulate or impede commerce with foreign nations; but the imposition of a general tax on goods from another state, arriving in the taxing state as their place of destination, is not a regulation of commerce with the objectionable effect. Brown v. Houston, 5 Sup. Ct. Rep. 1091.

A state cannot regulate foreign commerce, but it may do many things which more or less affect it. It may tax the vehicles of commerce the same as other property owned by its citizens. Wiggins Ferry Co. v. East St. Louis, 2 Sup. Ct. Rep. 257.

Under article 1, § 8, of the constitution of the United States, the power of congress to regulate commerce among the states,—interstate commerce,—which consists, among other things, in the transportation of goods from one state to another, is exclusive. Hardy v. Atchison, T. & S. F. R. Co., (Kan.) 5 Pac. Rep. 6.

A legislative enactment regulating freight tariffs upon goods transported through the state to points without it is an infringement of the power of congress to regulate commerce between the states. Carton v. Illinois Cent. R. Co., (Iowa,) 13 N. W. Rep. 67.