*209 OPINION
BAILEY, J.
The plaintiffs are certain corporations organized either in the State of California or in the Territory of Hawaii, and are growers of sugar cane or producers, processors and handlers of sugar within that territory.
The bill of complaint seeks to have the Court declare the provisions of the Act of Congress, known as the Sugar Act, to be unconstitutional in so far as it provides for the fixing of a quota for sugar for the Territory of Hawaii, and the regulating of the production, processing and handling of sugar in that territory; and that the Secretary of Agriculture be permanently enjoined from carrying into effect the provisions of that act as respects the plaintiffs and their property and Territory of Hawaii.
The act provides that the Secretary of Agriculture may forbid the transportation to, receipt in, the processing or marketing in Continental United States and the processing in *210 Hawaii or Puerto Rico for consumption in Continental United States of sugar from these areas in excess of the quotas fixed by him for any calendar year. These quotas are to be based on average quantities brought from Hawaii or Puerto Rico into Continental United States for consumption or which were actually consumed during the three representative years between 1925 and 1933, inclusive, as the Secretary may from time to time determine as the most representative three years. These quotas may be adjusted with reference to quotas to be established for certain of the insular possessions of the United States together with the Canal Zone and also Cuba. With respect to Continental United States the statute itself fixes certain minimum quotas.
The plaintiffs claim that the Act is unconstitutional in that the Territory of Hawaii is discriminated against in that a quota was fixed by the act itself for the continental producing areas, but the fixing of a quota for Hawaii was left to the Secretary.
The bill does not seek to have the act declared unconstitutional as a whole but only in so far as certain provisions apply to Hawaii, and as to the manner in which the Secretary has undertaken to carry out its provisions.
The joint resolution of Congress (30 Stat. at Large 750) providing for the annexation of Hawaii provided “that the said Hawaiian Islands and their dependencies be, and they are hereby, annexed as a part of the territory of the United States and are subject to the sovereign dominion thereof.” The Act of Congress of April 30, 1900 (U.S.C.A. Title 48, sec. 495) provides that — “The Constitution . . . shall have the same force and effect within the Territory of Hawaii as elsewhere in the United States.”
As to the territories or possessions of the United States to which the provisions of the Constitution have not been extended expressly, it has been held that the powers of Congress are limited as to these territories only by those funda *211 mental principles and rights which protect an individual against an arbitrary deprivation of life, liberty or property, but not by other limitations of the Constitution on the powers of Congress. As to organized territories which have become integral parts of the United States and to which Congress has expressly extended the Constitution, other restraints upon the power of Congress apply, such as the requirements of equality of taxation for the purposes of the general, government (this seems to result from the opinion of the Supreme Court in Loughborough v. Blake, 5 Wheat. 317, and Binns v. United States, 194 U. S. 486), the right to trial by jury and perhaps others.
That Hawaii is an organized territory is unquestionable and the Constitution, so far as applicable, controls the action of Congress, is settled. Rasmussen v. United States, 197 U. S. 516; Farrington v. Tokushige, 273 U. S. 284.
The power of Congress “To regulate commerce with foreign nations, among the several states and with the Indian tribes” does not expressly include the territories, and some doubt has been expressed as to the existence of that power. Ex parte Hanson, 28 Fed. 127. But this power has nevertheless been continually exercised by Congress for many years.
If the power of Congress to pass this act depended solely upon this clause of the Constitution, it might well be doubted that Congress could discriminate as between Hawaii and Continental United States or prohibit the importation from Hawaii into Continental United States of articles of trade or commerce, other than those that might be deemed injurious to health or morals or otherwise deleterious. Anchor Coal Co. v. United States, 25 Fed. (2nd) 462; Welton v. Missouri, 95 U. S. 275, 280; County of Mobile v. Kimball, 102 U. S. 691.
But Congress is also given the power “to dispose of and make all needful rules and regulations respecting the Territory or other property belonging to the United States.” Under this it has been held that its power is absolute and uncon *212 trolled except by those elementary principles above mentioned, and also, in the case of organized territories, by the inhibitions of the Constitution. Subject to these limitations it has all the power that a state government has over its own citizens. It would seem then that apart from the Commerce clause it has full power to regulate the commerce of a territory, whether organized or not and if necessary or expedient to lay embargoes against exports. This authority would arise, as was said in De Lima v. Bidwell, 182 U. S. 196, in reference to its general powers over a territory, “not necessarily from the territorial clause of the Constitution, but from the necessities of the case, and from the inability of the States to act upon the subject.”
The great distance of Hawaii from the continent, separated by the ocean, the difference in race of many of its inhabitants, the differences in manner of living, in the raising of its agricultural products, all might give rise for many grounds for legislation as to its commerce which would not apply to the Continent.
The contention of the plaintiffs that the effect of the Act and of the action of the Secretary thereunder will constitute a preference of the ports of Continental United States over those of Hawaii is met by the decision of the Supreme Court in Alaska v. Troy, 258 U. S. 101, holding that the provision of the Constitution that “no preference shall be given by any regulation of commerce or revenue to the ports of one State over another”, does not apply to the ports of even the territories which have been incorporated into the United States.
In my opinion, therefore, Congress has the power to limit the importation of sugar from Hawaii, and that limitation in no way deprives the plaintiffs of property without due process of law. ■
The plaintiffs allege that in fixing the quotas the Secretary did not use the same period in the case of Hawaii as that used by him in fixing the quotas for other areas; that the *213 quotas for Hawaii are incorrect and inexact, and known to be so by the officials of the Department of Agriculture; that the Secretary unjustly discriminated against the Territory of Hawaii and the plaintiffs.
Regardless of any question as to the power of Congress to fix these quotas for Hawaii in any manner that it might deem fit under its general powers over that Territory, it would seem that this delegation of powers is not prohibited by the Constitution and are similar to those granted to the President by the Tariff Act of 1922 authorizing the President to change the classification and rates of duty established in that act upon investigation of differences in foreign and domestic cost of production. These powers were sustained by the Supreme Court in Hampton v. United States, 276 U. S. 394.
The power of the Secretary to fix quotas, so far as the importation of sugar into Continental United States is concerned, might arise from the power to govern' the territory itself and to make rules and regulations for its government, but I do not think that this power would extend to the fixing of a tax, not for the benefit of the territory, but for the general government. However, so far as the delegation of power here involved is concerned, I think, that in the light of the decisions of the Supreme Court, that power was properly delegated. Congress left to the Secretary the power to determine as the basis of the quota, the three years which he deemed to be the most representative for the general purpose of the act. His power was to be exercised for the purpose of adjusting production to consumption and in doing so he must have due regard to the welfare of domestic producers and to the protection of domestic consumers and to a just relation between the prices received by “domestic producers and the prices paid by domestic consumers.”
If the powers given to the Secretary were properly delegated then he had full discretion in ascertaining the facts upon which his actions were based, and the Court has no jurisdic *214 tion to review his decisions unless they be arbitrary and palpably incorrect. Much evidence has been introduced in the trial of this case attacking the correctness of the facts found by the Secretary and to show that the data upon which he based his actions were incorrect. In my opinion the court cannot go into the question as to the means by which the Secretary arrived at his conclusions. The real question is whether his findings are so clearly unjustified by the facts as to show that his action was arbitrary. From the whole testimony I cannot find that the facts upon which it is claimed that the quotas were based have been disproved to such an extent as to show that his actions were arbitrary or even incorrect, had the court power to determine the question of mere incorrectness. It is unnecessary to discuss that evidence in detail, but I am satisfied that the quotas fixed by the Secretary were not fixed arbitrarily, or were substantially incorrect.
The plaintiffs further claim that by reason of the discriminatory fixing of quotas by the Secretary the processing tax provided for in the act will not be uniform throughout the United States.
This tax on its face is uniform throughout the United States including in that designation those territories to which Congress has extended the Constitution. The rate is uniform and the mere fact that it may impose greater burdens in some localities than in others does not affect the power of Congress. The function delegated to the Secretary is to calculate the rate according to certain data and he does not himself impose the tax.
So far as the processing tax is concerned, therefore, I think that Congress had the power to delegate this authority to the Secretary.
If the existence of an emergency be necessary to call forth the exercise of these powers of Congress, I think there is no doubt that an emergency did exist, not only in the sugar trade *215 in the United States but also in trade and commerce in sugar with foreign countries and in commodities in general.
It is by no means clear that in view of the rise in the price of sugar, due largely to the effects of the administration of the Sugar Act, that the plaintiffs have suffered any financial loss, in spite of the restraints upon their exportation of sugar. In fact I think that the evidence shows that the plaintiffs will gain rather than lose by the enforcement of the Act.
Upon the whole case, therefore, I think that the provisions of the Sugar Act and the actions of the Secretary of Agriculture attacked by the plaintiffs do not operate to deprive these plaintiffs of property without due process of law, and the bill of complaint should be dismissed with costs.